McKinney, J.
delivered the opinion of the court.
This bill is brought against the defendants as the heirs at law of William A. Gant, deceased, to obtain a decree for the specific execution of a contract entered into between the complainant and said William A. Gant, on the 11th day of April, 1840, for the purchase of a tract of land of one hundred acres, by the former from the latter.
The title bond executed at the time of the contract, stipulates, that “ when the aforesaid George Bussey pays to William A. Gant eight hundred dollars in cash, then *239 the said Gant binds himself, his heirs and assigns, to make a good warranty title to the said George Bussey, his heirs,” &c. The time limited in said bond for payment of the purchase money, was the 1st of March, 1841.
The bill alleges that the purchase money has been fully paid. This allegation is controverted by the defendants in their answer. They state, that a balance of two hundred and sixteen dollars and fifty-three cents, with interest thereon from the 4th day of April, 1844, still remains justly due and owing from the complainant in part of the price of said land, as they believe. They allege, that on the day last above mentioned, the complainant and William A. Gant had a settlement of all their accounts, which resulted in the balance above stated, agaiust the complainant. A paper is exhibited by the defendants which purports to contain an account of various sums of money due from the complainant to William A. Gant. The items of the account are without date; but it is rendered probable that they accrued at different times, from a date anterior to the purchase of said tract of land, up to the death of said Gant, which happened in 1844.
The aggregate amount of said account, inclusive of the price of the land, is two thousand one hundred and thirty-four dollars and fifty-three cents. '
The proof shows that at varions times between the 3d of March, 1841, and the 19th of November, 1843, there came to the hands of said Gant, in the capacity of agent of the complainant, the aggregate sum of one thousand nine hundred and seventy-six dollars and forty cents, the whole of which he seems to have been permitted to retain to his own use. At the foot of the account above mentioned, a credit is stated for one thou *240 sand seven hundred and eighteen dollars, which, being deducted from the amount of debits, leaves the balance of two hundred and sixteen dollars and fifty-three cents, insisted upon by the defendants as part of the purchase money still remaining due for said land.
It appears from the proof, that the parties were engaged a day or two in endeavoring to make a settlement of all their matters; at which time the account before mentioned was made out by said Gant; but the testimony satisfies us, that the complainant never recognized, or assented to, the settlement insisted on by thp defendants; and, in fact, that no valid or binding settlement was ever made between the parties.
In reference to the sum of money received by Gant, and retained by him with the consent of the complainant, and which, we think, is to be regarded as a payment, there .is no proof of any application thereof by the mutual consent of the parties; nor is there direct proof of application by the act of either party.
An account was taken in the cause by the clerk and master, which need not be noticed, as it was disregarded by the chancellor.
The decree assumes that a settlement was made between the parties, which was mutually binding; and gives to the account before mentioned the effect of a stated account; and declares that, if the balance assumed to be due, which, with interest, is two hundred and eighty-six dollars and fifty-three cents, should be paid to the personal represntatives of Gant by the 1st day of November, 1849, then the complainant would be entitled to a decree of specific performance: but, that on failure to make payment as aforesaid, the master should proceed to sell said tract of land for cash, and to apply *241 the proceeds, first, to the satisfaction of said balance found due from the complainant.
This decree, we think, is erroneous in several respects.
1. In treating the account exhibited by the defendants, as a stated account. . To support a plea of a stated account, it must be shown to have been final. It must likewise appear that the accounts have been examined, and that the balance was admitted as the true balance between the parties. 2 Dan. Ch. Pr., 761, and note 1, and authorities there cited. . .
2. But, had it been conceded that a balance of the purchase money remained due, the chancellor erred in decreeing that the land should be sold for its satisfaction. The defendants, the personal representatives of the vendor, could have no such decree made upon their answer. To have entitled them to this relief, they should have filed a cross bill.
3. Upon the facts established in proof in this cause, the purchase money of the land in question must be held to have been fully paid, by the application of the fund of one thousand nine hundred and seventy-six dollars and forty cents, in the hands of Gant, to the discharge of that debt, in the first place.
The general rule in respect to the appropriation of payments is, that a debtor, owing different debts to the same person, has the right to apply the payment, at the time when made, to either; but, if he fails to do so, and the payment be general, the creditor may apply it; and where no appropriation is made by either party, the law will apply it according to the intrinsic justice and equity of the case. Chitty on Con., 752, (5th Am. ed.) note 1.
*242 The right of the creditor to apply the payment is not unlimited. It is not always essential that there should have been an express declaration by the debtor, at the time of payment, to which of two accounts he intends the money to be applied. There are cases in which, though the payment be general, the creditor is not allowed to apply the payment to which account he pleases. Id., 753, 754.
The doctrine upon this subject, both of the English and American courts, seems to have been borrowed from the civil law. The rule of that law was, that where the application was not made by the parties, and where it became necessary to direct it by a court of justice, it ought to be applied to the debts which lie heaviest on the debtor, and which it concerned him most to discharge. 1 Evans’ Poth., 368 to 376. And the weight of authority in England as well as in this country is, we think, in accordance with this principle. See 1 Story’s Equity, sec. 459, (fourth ed.) note 1. Pattison vs. Hull, 9 Cowan’s Rep., 747, and note b. where -the cases are reviewed. Hence, it has been adjudged, that a payment is to be applied rather to a debt of which the non-payment would expose the debtor to some penalty and to costs and damages, than to a debt the failure to discharge which would be attended with no such consequences. So a payment will be applied to a debt where the debtor has given a power or mortgage, rather than to a simple contract debt. Pattison vs. Hull, note b. In the case of Heyward vs. Lomax, (1 Vern., 24) it was held, that a general payment should be applied to a mortgage; “because,” say the court, “it is natural to suppose that a man would rather elect to pay off the *243 money for which interest is to be paid, than the money due on account, for which no interest is payable,” See also 2 Strange, 1194; 1 Har. and John,, 754; 2 Har. and John., 402; 9 Cowan, 412, 747; 1 Bibb, 334. Such also is the rule in various other instances given in the books.
Upon this principle we hold, that the fund in the hands of Gant should have been, and must be, applied to the discharge, in the first place, of the purchase money of the tract of land in question, as that debt was bearing interest, and as its discharge, in every view of the case, was most beneficial for the debtor.
The purchase money being thus fully satisfied, the complainant is clearly entitled to a decree of specific performance.
The decree of the chancellor will be reversed, and decree for the complainant.